UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

IVORY CRAWFORD,

        Plaintiff,                      Case No. 2:16-cv-87

v.                                              Honorable Gordon J. Quist

DUNCAN MACLAREN, et al.,

        Defendants.
_____/

## OPINION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

## Discussion

        I.      Factual allegations

        Plaintiff Ivory Crawford, a state prisoner currently confined at the Chippewa Correctional Facility (URF), filed this *pro se* civil rights action against Defendants Warden Duncan MacLaren, Deputy Warden Kathy Olsen, Corrections Officer Unknown Newell, Corrections Officer

Unknown Gabe, dog rehabilitation program administrator Denise Peller, and Grievance Coordinator Lou Belinger. In his complaint, Plaintiff alleges that on June 10, 2014, while he was confined at the Kinross Correctional Facility (KCF), he and another prisoner obtained permission from Defendant Newell to go into an adjacent unit to pet one of the dogs in the dog rehabilitation program. While Plaintiff was petting the dog, it attacked him and bit him in the face, causing puncture wounds to his nose, lip, and chin.

Plaintiff was taken to War Memorial Hospital for treatment. Following this incident, Plaintiff filed a grievance against MDOC employees responsible for failing to properly screen the dogs and implement the program. On June 11, 2014, Plaintiff was reviewed on a falsified "out of place" misconduct ticket written by Defendant Newell. On June 12 or 13 of 2014, Defendant Newell told Plaintiff that he had written the ticket on Plaintiff at the direction of Defendant Olsen, because Defendant Olsen did not want to lose the dog program. Plaintiff was subsequently transferred to URF.

On July 8, 2014, Plaintiff sent a letter to Defendants MacLaren and Olsen complaining about the transfer. On July 11, 2014, Plaintiff filed a grievance against Defendant Olsen for falsifying the transfer order. On July 30, 2014, Plaintiff received a rejection notice regarding the grievance, along with a note from Defendant Belinger stating that Plaintiff's issue could only be solved by staff at URF. Plaintiff then filed a grievance on Defendant Belinger regarding the grievance rejection.

Plaintiff claims that Defendants violated his rights under the First, Eighth, and Fourteenth Amendments. Plaintiff seeks compensatory and punitive damages, as well as equitable relief.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*

-

*v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(I)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff alleges that Defendants violated the Eighth Amendment by allowing the dog that attacked him to be admitted into the dog program and by allowing Plaintiff to leave his unit to pet the dog, both of which led to Plaintiff's injuries. The Eighth Amendment imposes a

constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). In this case, Plaintiff fails to allege any facts showing that Defendants were aware of any risk of injury to Plaintiff, or to other prisoners, until after the actual attack on Plaintiff by the dog. There is nothing in Plaintiff's allegations which supports an inference that Defendants were deliberately indifferent. The factual allegations in his complaint, at most, support only an inference of negligence. Mere negligence is insufficient to state a claim under the Eighth Amendment. *Farmer,* 511 U.S. at 835. Therefore, the Court will dismiss Plaintiff's Eighth Amendment claims.

Plaintiff also claims that Defendants' conduct violated his due process rights. Plaintiff received a misconduct ticket for being "out of place." This is a class II misconduct. MDOC Policy Directive 03.03.105, attachment B. A prisoner's ability to challenge a prison misconduct conviction depends on whether the conviction implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 486-87 (1995). Under Michigan Department of Corrections Policy Directive 03.03.105, ¶ B, a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a Class I misconduct. (*See* Policy Directive 03.03.105, ¶ AAAA). Therefore, contrary to the assertion in his complaint, Plaintiff should not have been denied good time or disciplinary credits as a result of his Class II misconduct convictions. The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g., Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999). Plaintiff, therefore, fails to state a due process claim arising from his Class II misconduct conviction.

Plaintiff also appears to be claiming that his transfer to URF violated his procedural due process rights. Plaintiff alleges that the transfer violated his rights to due process of law, as it was effectuated without notice or a hearing. It is well established that a prisoner has no inherent constitutional right to be housed in a particular institution. *Olim v. Wakinekona*, 461 U.S. 238 (1983); *Hewitt v. Helms*, 459 U.S. 460, 468 (1983); *Meachum v. Fano*, 427 U.S. 215, 224 (1976).

The Supreme Court has held that even transfers having a substantial adverse impact on a prisoner do not compromise any constitutionally recognized liberty interests. *Meachum*, *supra*, at 224. "That life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with more severe rules." *Id.* at 225.

There being no inherent right within the Constitution upon which Plaintiff's claim can be based, Plaintiff must look to state law.

> [I]f the state grants a prisoner a right or expectation that adverse action will not be taken against him except upon the occurrence of specified behavior, 'the determination of whether such behavior has occurred becomes critical, and the minimum requirements of procedural due process appropriate for the circumstances must be observed.'

*Vitek v. Jones*, 445 US 480, 490-91 (1980), *quoting Wolff v. McDonnell*, 418 U.S. 539, 558 (1974); *see also Hewitt v. Helms*, 459 U.S. 460 (1983).

The Sixth Circuit has also said:

> When a state creates an entitlement and provides that it may not be defeated except upon a finding of a specific substantive predicate, the state's defeat of that entitlement without making such a finding is a violation of due process.

*Spruytte v. Walters*, 753 F.2d 498, 508-09 (6th Cir. 1985), *cert. denied* 474 U.S. 1054 (1986).

However, in light of the United States Supreme Court's decision in *Sandin v. Conner*, 515 U.S. 472, 115 S. Ct. 2293 (1995), a plaintiff seeking to allege a procedural due process violation based on a state created liberty interest must not only show it is derived from mandatory language in a regulation, but also that it imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484, 115 S. Ct. at 2300; *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). Plaintiff in this case fails to allege such a hardship. Therefore, Plaintiff's claim that he was denied procedural due process with regard to his transfer to URF is without merit.

Plaintiff further claims that Defendant Belinger violated his due process rights when he improperly rejected Plaintiff's grievance. Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendant Belinger's conduct did not deprive him of due process.

Plaintiff also claims that his transfer to URF was improperly motivated by a desire to retaliate against him for his use of the grievance procedure. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Filing a grievance is constitutionally protected conduct under the First Amendment. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996). Plaintiff, however, cannot show that his transfer to URF was an adverse action taken against him for filing a grievance regarding the dog attack. "Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005). *See, e.g., Smith v. Yarrow*, 78 F. App'x. 529, 543 (6th Cir. 2003) ("transfer from one prison to another prison cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights") (internal quotation marks omitted). If, however, a foreseeable consequence of a transfer would be to substantially inhibit a prisoner's ability to access the courts, then such a transfer could be considered an "adverse action" that would deter a person of ordinary firmness from continuing to engage in the protected conduct. *See Hill v. Lappin*, 630 F.3d 468, 474 (6th Cir. 2010) (holding that transfer to administrative segregation or another prison's lock-down unit or can be sufficient to constitute adverse action); *Siggers-El*, 412 F.3d at 702 (holding that a transfer was an "adverse action," where the transfer resulted in plaintiff losing a high paying job that paid for his lawyer fees and moved him further from the attorney); *Johnson v. Beardslee*, No. 1:06-CV-374, 2007 WL 2302378, at *5 (W.D. Mich. Aug. 8, 2007). Similarly, the Sixth Circuit has held that a transfer to segregation or to an area of the prison used to house mentally disturbed inmates could be sufficiently adverse. *See Thaddeus-X*, 175 F.3d at 398; *see also Hill*, 630 F.3d at 468.

Plaintiff's transfer was from one level I and II facility to another level I, II, and IV facility. Plaintiff does not allege that his security classification was increased. A transfer to the general population of another prison is not typically an adverse action. *See Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) (collecting cases); *see also Hill*, 630 F.3d at 473; *Thaddeus-X*, 175

F.3d at 398. Plaintiff does not allege that he was transferred to a lock-down unit at the new facility or that his access to the courts was compromised as a result of the transfer. Therefore, Plaintiff's retaliation claims are properly dismissed.

Finally, the Court notes that Plaintiff fails to make specific factual allegations against Defendant MacLaren. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendant MacLaren engaged in any active unconstitutional behavior. Accordingly, Plaintiff's claims against Defendant MacLaren are properly dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611

(6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:  August 4, 2016                              /s/ Gordon J. Quist
                                                   GORDON J. QUIST
                                            UNITED STATES DISTRICT JUDGE